UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**WARREN J. SMITH,**

   *Plaintiff*,

v.                                       Case No.  SA-22-CV-01383-JKP

**DENIS R. MCDONOUGH, SEC.
UNITED STATES DEPARTMENT OF
VETERAN AFFAIRS,**

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Denis R. McDonough, Secretary, U.S. Department of Veteran Affairs' (hereinafter "the VA") Motion to Dismiss. *See* ECF No. 9. Plaintiff Warren J. Smith filed a response and the VA filed a reply to the response. *See* ECF Nos. 10, 11. The Court ordered Smith to refile his response because the page margins were too wide, making it unreadable, which he did. *See* ECF Nos. 12, 13, 15.[1] The motion is now ripe for ruling. After due consideration of the parties' briefings and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the VA's motion. *See* ECF No. 9.

### BACKGROUND

Smith asserts claims of discrimination, retaliation, and hostile work environment in relation to his former employment with the U.S. Department of Veterans Affairs in Austin, Texas, from which he resigned on April 1, 2014. *See* ECF No. 7 at ¶¶ 10–11. He asserts claims based on his color (dark), race (black), nationality (African American), age (born July 1979),

---

[1] Smith filed his revised response twice. *See* ECF Nos. 13, 15. The Court reviewed both documents and, though they have different formatting, they are substantively the same.

disability (degenerative bone disorder), and prior Equal Employment Opportunity (EEO) activity. Smith's Federal Complaint was preceded by two EEO Complaints. First, Smith filed an EEO Complaint on October 26, 2012, alleging 31 acts of discrimination between April 2009 and October 2012, including multiple denials of his training requests, harassing and abusive treatment by colleagues, supervisors ending his telework agreement and taking other actions to "set him up for failure," and denial of his non-competitive promotion. *See* ECF No. 7 at ¶¶ 15(1)–(30). Four days after making initial EEO contact, Smith withdrew that complaint. *See* ECF Nos. 6-1 at 1; 7 at ¶ 16. He says he withdrew the complaint "as a result of duress, fraud, mistake, deception, and or conduct resulting from third parties." *See* ECF No. 7 at ¶ 13. On November 15, 2012, Smith initiated the EEO process a second time by contacting an EEO counselor. During the informal counseling stage, Smith complained of additional events that allegedly occurred beginning on November 8, 2012.

In February 2013, Smith submitted an "addendum" through which he attempted to re-assert his previously withdrawn complaints regarding the events that occurred between April 2009 and October 2012. *See* ECF Nos. 6-1, 6-2. The EEOC found no evidence to support Smith's reasons for withdrawing his October 26, 2012 complaint, so allegations from that complaint were not accepted as part of his second EEO Complaint. *See* ECF Nos. 6-3; 7 at ¶¶ 17–18. After reviewing Smith's second EEO Complaint, the VA Office of Employment Discrimination Complaint Adjudication (OEDCA) issued a Final Order finding no discrimination or retaliation and entering summary judgment in the Agency's favor. Smith appealed to the EEOC Office of Federal Operations, which affirmed OEDCA's Final Order in March 2022, denied Plaintiff's motion for reconsideration, and issued a "Right to Sue" letter on September 28, 2022. *See* ECF No. 1-1. Smith commenced this litigation by filing his initial

Complaint on December 27, 2022. *See* ECF No. 1. Smith filed his Amended Complaint, which is the live pleading, on April 2, 2023. *See* ECF No. 7.

Smith alleges discrimination based on color, race, nationality, age, and disability status, and sets forth disparate treatment, disparate impact, and retaliation causes under Title VII, *see* ECF No. 7 at ¶¶ 22–35 (First, Second, and Third Claims for Relief); discrimination and hostile work environment causes under the Rehabilitation Act of 1973, *id.* at ¶¶ 36–38 (Fourth Claim for Relief); a cause under the Age Discrimination in Employment Act of 1967, *id.* at ¶¶ 39–41 (Fifth Claim for Relief); a hostile work environment cause under Title VII, *id.* at ¶¶ 45–50 (Seventh Claim for Relief); a retaliation cause under the Rehabilitation Act, *id.* at ¶¶ 51–56 (Eighth Claim for Relief); and a "Retaliatory Hostile Work Environment" cause, *id.* at ¶¶ 57–62 (Ninth Claim for Relief).[2]

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant

---

[2] Smith's Sixth Claim for Relief is not a distinct claim but rather an attempt to cover all applicable damages. *See* Amended Complaint, ECF No. 7 at ¶ 42; *see also* VA's Motion to Dismiss, ECF No. 9 at 2, n.1.

dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a motion to dismiss under Federal Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d at 324).

A Complaint should only be dismissed under Federal Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the

opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97

## ANALYSIS

### I. Exhaustion and Timeliness

The VA requests that the Court disregard several of Smith's claims as unexhausted and time-barred. Exhaustion of administrative remedies is a prerequisite to filing any employment discrimination suit. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also* 29 C.F.R. § 1614.407. Federal regulations require federal employees to exhaust administrative remedies prior to bringing a Title VII action in federal court by initiating contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). "Failure to notify the EEO counselor in a timely fashion may bar a claim" unless the claimant successfully asserts "a defense of waiver, estoppel, or equitable tolling." *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).

To analyze the veracity of the VA's argument, this Court must rely upon documents outside the Amended Complaint, specifically, the VA EEO's Notice of Partial Acceptance of Smith's Complaint and the EEOC's Order Denying Smith's Motion to Reinstate Claims. The VA attaches these documents to its Motion to Dismiss and Smith incorporates them by reference in his response to the motion. *See* ECF Nos. 9-3, 9-4, and 13 at 5. Because the Court may take judicial notice of the administrative records as public reports, and because these records are incorporated by Smith, and no party issues objection to the Court's consideration, this Court will

consider these documents without converting this Motion to Dismiss to a Motion for Summary Judgment. *See Brand Coupon Network*, 748 F.3d at 635.

Smith initiated his first EEO complaint on October 26, 2012, complaining of events that occurred between April 2009 and October 2012. Of the 31 factual allegations he made in the October 26, 2012 complaint, five occurred within the 45-day window for timely reporting. However, a few days later, Smith voluntarily withdrew his complaint. About two weeks after that, on November 15, 2012, Smith initiated contact with EEO again, raising new allegations. He later attempted to reassert the allegations in his October 26, 2012 complaint. The VA argues Smith waived claims asserted in his October 26, 2012 complaint when he voluntarily withdrew it and those claims are now time-barred. Smith argues matters raised in his October 26, 2012 complaint should not be time-barred because he was not represented by counsel when he withdrew his complaint, and a supervisor misled him into withdrawing the complaint by suggesting his concerns would be addressed outside the EEO process. *See* Plaintiff's Response, ECF No. 15 at 5–6. The EEOC considered Smith's explanation for his withdrawal and found no evidence to support it. *See* Defense Exhibit 4, ECF No. 9-4 at 4 ¶ 4. The EEOC, therefore, declined to investigate matters occurring outside the 45-day window preceding the November 15, 2012 complaint, finding them to be waived and time-barred. *See* Defense Exhibits 3, 4, ECF Nos. 9-3, 9-4. As a result, those claims are not only time-barred, they are unexhausted as well.

The District Court is charged with making an independent judgment about an employee's equitable tolling defense. *Teemac v. Henderson*, 298 F.3d 452, 455 (5th Cir. 2002). Indeed, "raising a limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the complaint." *Id.* at 456. At this stage of the litigation, the Court finds that it would be premature to adopt the VA's argument that

all matters raised in Smith's October 26, 2012 complaint are time-barred. That being said, matters arising before the 45-day window preceding the October 26, 2012 complaint are time-barred as a matter of law. Furthermore, Smith will have to produce competent summary judgment evidence to support his equitable tolling defense for matters timely raised in the October 26, 2012 complaint to proceed to trial.

The Court, therefore, finds the following allegations may proceed at this juncture because they allegedly occurred within 45 days before Smith's October 26, 2012 complaint:

- On September 26, 2012, and twice in August 2012, Contract Supervisor David Peterson threatened to remove Smith from a job-related system and ended his arrangement to telework from home.
- On September 26, 2012, Peterson and other contracting officers criticized and overly scrutinized Smith's work.
- On September 26, 2012, Peterson gave Smith a written counseling.
- On October 25, 2012, Contracting Officer Marc Cypert was verbally abusive and irate toward Smith, accusing Smith of misleading customers.
- On October 29, 2012, Peterson and other contracting officers made demeaning comments to Smith.

*See* Notice of Partial Acceptance of the EEO Complaint for Warren Smith, ECF No. 9-3 at 3. The Court further finds matters that allegedly occurred within 45 days before Smith's November 15, 2012 complaint, which were considered by the EEOC, may proceed,[3] namely:

- On November 8, 2012, Sharon Brickford, Immediate Supervisor, threatened to place Smith on a Performance Improvement Plan (PIP).
- On November 29, 2012, Peterson threatened to place Smith on a PIP.
- In December 2012, Cypert interrupted Smith in an aggressive tone while he was on the telephone.
- On February 7, 2013, Brickford placed Smith on a PIP.
- On March 19, 2013, Brickford terminated Smith's agreement to telework from home.

*Id.* at 4. To summarize, the factual allegations supporting Smith's complaint that shall proceed include supervisors and colleagues engaging in harassing and abusive treatment, and supervisors

---

[3] The Court notes that the alleged events of October 25, 2012 and October 29, 2012 also fall within the window of events occurring 45 days before the November 15, 2012 complaint.

terminating his telework agreement, giving him a written counseling, threatening to place him on a Performance Improvement Plan (PIP), and ultimately placing him on a PIP. Having defined the universe of potentially timely allegations, the Court now turns to the substance of Smith's claims.

## II.     Title VII Discrimination

Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact. *Pacheco*, 448 F.3d at 787. Smith asserts causes of action based on both. *See* Amended Complaint, ECF No. 7 at ¶¶ 22–32 (First and Second Claims for Relief). Disparate treatment claims address "employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id*. Disparate impact claims, on the other hand, deal with employment practices or policies that are facially neutral in their treatment of protected groups, but have a disproportionately adverse effect on a protected group. *Id*. Smith's allegation that he was discriminated against on the basis of race because he is black is sufficient to establish his membership in a protected group for the purpose of establishing Title VII liability. The question is whether he has pled enough other facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555–558, 570.

### a.     Title VII Disparate Treatment

Disparate-treatment discrimination occurs when an employee is subject to adverse employment action on account of their membership in a protected group. Plaintiffs "need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). According to the Fifth

Circuit, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citations and internal quotation marks omitted).

The Fifth Circuit recently overturned its precedent limiting the universe of actionable adverse employment actions to "ultimate employment decisions." *See Hamilton v. Dallas County*, ___ 4th ___, 2023 WL 5316716 (5th Cir. 2023). Instead, to adequately plead an adverse employment action, plaintiffs need only show they "were discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment.'" *Id.* at 18 (quoting 42 U.S.C. § 2000e-2(a)(1)). In this case, Smith does not assert that he was discriminated against with respect to hiring or firing. He alleges he was denied promotion, but that allegation is time-barred because it allegedly occurred on July 8, 2011, which is much more than 45 days before—indeed, more than a year before—he filed his first EEO complaint on October 26, 2012. *See* ECF No. 7 at ¶ 16. The question, then, is whether Smith alleges he was denied the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Here, Smith's allegations of discrimination based on criticism and scrutiny of his work and having his telecommuting agreement revoked could potentially support a finding that he was denied the terms, conditions, and privileges of employment.

Smith alleges supervisors scrutinized and criticized his work, subjected him to written counseling, threatened to place him on a PIP, and then placed him on a PIP, all for discriminatory reasons. The Fifth Circuit has held that criticism of an employee's performance is not actionable if it does not "relate[] to the protected class of persons of which the plaintiff is a member." *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). Smith will have to

9

proffer competent summary judgment evidence to overcome a challenge to his allegation that he was criticized and placed on a PIP for discriminatory reasons. That being said, his factual allegations are sufficient for this claim to move forward at this stage of the litigation.

With respect to Smith's telecommuting agreement, the Fifth Circuit "has yet to conclude definitively whether revocation of telecommuting privileges constitutes an adverse employment action." *Price v. Wheeler*, 834 F.App'x 849, 856 (5th Cir. 2020). Given the Fifth Circuit's recent *Hamilton* decision expanding the universe of actionable adverse employment actions, the Court finds it prudent to allow this claim to proceed at this juncture. Therefore, the Court finds Smith has sufficiently pled he suffered adverse employment action based on unfair scrutiny of his work and having his telecommuting agreement revoked.

The VA challenges Smith's complaint for failing to establish a causal connection between his membership in a protected class and his alleged adverse employment actions. However, Smith does allege he was "judged by a double standard" and expected to meet impossible work standards. *See* ECF No. 7 at ¶ 19. He further alleges he was "subjected to differential treatment by the VA employees." *Id.* at ¶ 23. The Court finds, at the pleading stage, these factual allegations are sufficient to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555–558, 570. Smith's cause of action for Title VII disparate treatment shall proceed. *See* Amended Complaint, ECF No. 7 at ¶¶ 22–27 (First Claim for Relief).

      **b.**     **Title VII Disparate Impact**

In disparate impact cases, proof or finding of discriminatory motive is not required. *Pacheco*, 448 F.3d at 787. The cornerstone of a disparate impact investigation is the identification of a neutral policy. *Id.* at 792. The Fifth Circuit has held that a disparate impact

investigation cannot reasonably be expected to grow out of an administrative charge of disparate treatment discrimination if: (1) the charge of discrimination facially alleges disparate treatment; (2) the charge identified no neutral employment policy; and (3) the charge complained of past incidents of disparate treatment only. *Id*. at 792.

Here, Smith's allegations fail to meet the standard set forth by the Fifth Circuit. Smith facially alleges disparate treatment, not disparate impact. Allegations about the way supervisors and colleagues treated him, his supervisors' criticism of his work, revocation of his telecommuting agreement, and the decision to place him on a PIP all deal with his alleged disparate treatment. Furthermore, Smith alleges past incidents of disparate treatment only. Finally, at no point in his amended complaint does Smith identify a "neutral employment policy" that resulted in his discrimination. Smith vaguely alludes to "work-related policies" that were used against him; however, such bare, conclusory statements, without more, are not sufficient to meet his pleading burden. *See* ECF No. 7 at ¶ 29. Viewing all well-pled facts in the light most favorable to Smith, the Court finds Smith failed to plead sufficient facts to support his legal theory. *Greninger*, 188 F.3d at 324. Smith's cause of action for Title VII disparate impact is, therefore, dismissed. *See* ECF No. 7 at ¶¶ 28–32 (Second Claim for Relief).

### III. Title VII Retaliation

Smith's Third Claim for Relief asserts Title VII retaliation. *See* Amended Complaint, ECF No. 7 at ¶¶ 33–35. A plaintiff establishes a prima facie case of retaliation by showing: (1) they engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *LeMaire v. State of La.*, 480 F.3d 383, 388 (5th Cir. 2007). Under Title VII, a "protected activity" for the purposes of a retaliation claim includes any opposition to

any practice rendered unlawful by Title VII, including "making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'n Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

To state a plausible retaliation claim, a plaintiff must allege sufficient facts to establish a causal link existed between the alleged protected activity and adverse employment actions. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014), *cert. denied sub nom.*, 135 S.Ct. 2804 (2015). A causal link is established if the plaintiff alleges facts which would show an adverse employment action was based, even in part, on knowledge of the employee's protected activity. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996). To satisfy the causation prong, the plaintiff's allegations must support the inference that "the employment decision and his protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

Viewing the complaint in a light most favorable to Smith, the Court finds he sufficiently pled a plausible causal link between his EEO participation and alleged adverse employment actions. Smith alleges "Defendants took disciplinary action against Plaintiff as a result of the Plaintiff making complaints with regard to his hostile work environment." *See* ECF No. 7 at ¶ 34. In other words, according to Smith, the allegations in his November 15, 2012 complaint were undertaken in retaliation for his filing the October 26, 2012 complaint. The Court already determined some of the allegations in the November 15, 2012 complaint—criticism of performance, placement on a PIP, and revocation of his telework agreement—could constitute adverse employment actions. Furthermore, filing an EEO complaint is a protected activity. Finally, Smith's allegation that his supervisors took disciplinary action against him "as a result"

of his EEO complaints satisfies the causation prong by showing an adverse employment action was based, even in part, on knowledge of his protected activity. *Sherrod*, 132 F.3d at 1122. Therefore, Smith's cause of action for Title VII retaliation shall proceed. *See* Amended Complaint, ECF No. 7 at ¶¶ 33–35 (Third Claim for Relief).

## IV. Rehabilitation Act

Smith asserts causes of action under the Rehabilitation Act for discrimination, retaliation, and hostile work environment. *See* Amended Complaint, ECF No. 7 at ¶¶ 36–38; 51–56 (Fourth and Eighth Claims for Relief). The Rehabilitation Act, like the Americans with Disabilities Act (ADA), prohibits employment discrimination against qualified individuals with disabilities, but the statutes govern different entities: the ADA applies to public entities and private employers, 42 U.S.C. § 12131(1), whereas the Rehabilitation Act prohibits discrimination in federal agencies and federally-funded programs and activities, 29 U.S.C. § 794(a). "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts. Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA." *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010).

A prima facie claim for failure to accommodate requires that (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for the known limitations. *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017). The Rehabilitation Act adopts the ADA's definition of "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A major life activity "also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id*. § 12102(2)(B). "Substantially limits" means the individual is limited "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be substantially limiting. *Id*.

In this case, Smith alleges he suffers from a degenerative bone disorder, but fails to allege his impairment "substantially limits one or more [of his] major life activities…" 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A). Smith offers no information on how his degenerative bone disorder affects his daily life activities, his ability to work, or his need for accommodation. *See Dark v. Potter*, 293 F.App'x 254, 259 (5th Cir. 2008). Viewing all well-pleaded facts as true, and in the light most favorable to Smith, the Court finds he has failed to state a claim upon which relief can be granted. *Greninger*, 188 F.3d at 324. Smith's causes of action under the Rehabilitation Act are, therefore, dismissed. *See* ECF No. 7 at ¶¶ 36–38; 51–56 (Fourth and Eighth Claims for Relief).

## V.      Age Discrimination in Employment Act

Smith asserts a cause of action for age discrimination under the Age Discrimination in Employment Act (ADEA). *See* Amended Complaint, ECF No. 7 ¶¶ 39–41 (Fifth Claim for Relief). For an ADEA claim to survive a motion to dismiss, the plaintiff must allege they (1) are within the protected class; (2) are qualified for the position; (3) suffered an adverse employment

action; and (4) were replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013). The Supreme Court has held that a plaintiff alleging age discrimination under the ADEA has the burden of proving that age was the "but-for cause" of the adverse employment action. *Leal*, 731 F.3d at 411 (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 176, 180 (2009)).

Smith's factual allegations fail to establish his age was the "but-for cause" of adverse employment action. Smith alleges VA employees "treated [Smith] as older, used his age as a criterion in work related matters and disrespected him from an age standpoint in the work environment." *See* ECF No. 7 at ¶ 40. He also alleges his supervisor was younger than him and "made sure [Smith] knew it." *Id*. Smith does not allege he suffered adverse employment action as a result of his age. His allegations of disrespect and use of age as a "criterion in work related matters" are insufficient to establish an actionable ADEA claim. Smith's cause of action under the ADEA is, therefore, dismissed. *See* ECF No. 7 at ¶¶ 39–41 (Fifth Claim for Relief).

## VI.     Title VII Hostile Work Environment

Smith asserts a cause of action under Title VII for hostile work environment. *See* ECF No. 7 at ¶¶ 45–50 (Seventh Claim for Relief). To establish a prima facie hostile work environment claim under Title VII, a plaintiff must show (1) they belong to a protected class; (2) they were subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999). The Court has already established Smith is a member of a protected class, as a black man. The Court has

further recognized Smith's allegation of unwelcome harassment by his supervisors and coworkers.

To establish the third prong of a hostile work environment claim, that is to establish harassment affecting a term, condition, or privilege of employment, the harassing conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). In this case, Smith alleges his work environment was so hostile it amounted to constructive discharge. Constructive discharge occurs when an employee is forced to involuntarily resign. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To establish a cause of action for constructive discharge, a plaintiff must allege facts showing "the employer deliberately [made] an employee's working conditions so intolerable that the employee [was] forced into an involuntary resignation." *Id*. (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). Smith describes a "no win" situation in which he was harassed and then, when he attempted to report the harassment, he was harassed even more. He further alleges, in satisfaction of the fourth prong of a hostile work environment claim, his complaints to management and human resources went unaddressed. The Court, therefore, finds Smith sufficiently pled a cause of action for Title VII hostile work environment and this cause shall proceed. *See* Amended Complaint, ECF No. 7 at ¶¶ 45–50 (Seventh Claim for Relief). The Court notes, however, that Smith will have to provide evidence showing the harassment he experienced was sufficiently severe or pervasive to alter the conditions of his employment to survive a summary judgment challenge. *Aryain*, 534 F.3d at 479.

### VII. Title VII Retaliatory Hostile Work Environment

Smith asserts a cause of action for retaliatory hostile work environment. *See* ECF No. 7 at ¶¶ 57–62 (Ninth Claim for Relief). While the Fifth Circuit does not currently recognize a cause of action for "retaliatory hostile work environment," twelve circuits do, and the Fifth Circuit does not expressly reject the viability of such a cause of action. *Montgomery-Smith v. George*, 810 Fed.App'x. 252, 258 (5th Cir. 2020) (unreported opinion). The Court, therefore, will assume Smith may pursue a retaliatory hostile work environment cause of action until the Fifth Circuit determines specifically the issue whether such a cause of action exists.

The elements of a Title VII retaliatory hostile work environment cause of action are a hybrid of the elements necessary to establish retaliation and hostile work environment. Under this hybrid test, the plaintiff must show: (1) they engaged in protected conduct, (2) they experienced unwelcome harassment, and (3) there was a causal link between the harassment and the protected activity. *Tejada v. Travis Assoc. for Blind*, No. A-12-CV-997, 2014 WL 2881450, at *3. Because the Court has found Smith has viable Title VII retaliation and Title VII hostile work environment claims, the Court similarly finds Smith has sufficiently pled his retaliatory hostile work environment claim. This cause of action shall therefore proceed at this stage of the litigation. *See* ECF No. 7 at ¶¶ 57–62 (Ninth Claim for Relief).

## LEAVE TO AMEND

Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). Thus, Federal Rule 15(a) favors granting leave to amend unless a substantial reason exists, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*,

3 F.3d 137, 139 (5th Cir. 1993); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Consequently, though Courts readily provide the opportunity to amend a deficient complaint before dismissing it with prejudice, such is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies. *Foman*, 371 U.S. at 182; *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

In this case, Smith amended his complaint after the VA filed its first Motion to Dismiss. *See* ECF Nos. 6, 7. U.S. Magistrate Judge Elizabeth S. Chestney, to whom this case is referred for pretrial management, denied without prejudice the VA's first Motion to Dismiss in light of Smith's amended pleading. The VA then filed the instant motion. *See* ECF No. 9. The Court, therefore, finds Smith has been given ample opportunity to cure deficiencies in satisfaction of Federal Rule 15(a). *See Herrmann Holdings Ltd. V. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002). Consequently, the Court finds further amendment would be futile and dismissal of the dismissed causes with prejudice is appropriate.

## CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the VA's Motion to Dismiss. *See* ECF No. 9.

Specifically, the Court **DENIES** the VA's motion with respect to Smith's causes of action for Title VII disparate treatment, Title VII retaliation, Title VII hostile work environment, and Title VII retaliatory hostile work environment. *See* ECF No. 7 (First, Third, Seventh, and Ninth Claims for Relief). Those causes shall be allowed proceed.

The Court **GRANTS** the VA's motion as to all other causes of action, which are, accordingly, **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is so ORDERED.
SIGNED this 8th day of September, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE